**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

In Re: Change Healthcare, Inc.,

Customer Data Security Breach Litigation

Miscellaneous Action No.: ____________

**NONPARTY BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO QUASH THE SUBPOENA AND REQUEST TO TRANSFER**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ... 1

BACKGROUND ... 1

A. Underlying Data Breach Litigation ... 1

B. The Subpoena ... 3

LEGAL STANDARD ... 4

ARGUMENT ... 5

I. THE MOTION SHOULD BE TRANSFERRED TO THE DISTRICT OF MINNESOTA. ... 5

II. THE SUBPOENA SHOULD BE QUASHED. ... 6

A. The Subpoena Seeks Irrelevant Information. ... 6

B. The Subpoena Imposes an Undue Burden on a Nonparty Disproportionate to Any Legitimate Discovery Need. ... 11

C. The Subpoena Seeks Discovery Obtainable from the Parties to the MDL. ... 16

D. The Rule 30(b)(6) Topics also impose an undue burden on BCBSMA. ... 17

III. The Court Should Order Plaintiffs to Pay BCBSMA's Costs. ... 17

IV. Alternatively, the Court Should Order Plaintiffs to Pay the Costs of Compliance. ... 18

CONCLUSION ... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barclays PLC v. FX Transparency, LLC*,
No. 1:22-MC-91048-PBS, 2022 WL 3227534 (D. Mass. Apr. 27, 2022)..............................19

*Benson v. Kemske*,
No. CV 17-3839, 2018 WL 5294572 (D. Minn. Oct. 25, 2018) ..............................................7

*Cardionet, LLC v. Infobionic, Inc.*,
2021 WL 2827380 (D. Mass. July 6, 2021)..................................................................................7

*Cedar Rapids Lodge & Suites, LLC v. Seibert*,
No. 14-CV-4839, 2018 WL 3019899 (D. Minn. June 18, 2018)................................13, 19, 20

*In re CenturyLink Sales Practices & Securities Litigation*,
No. CV 18-296 (MJD/KMM), 2020 WL 8256364 (D. Minn. Oct. 28, 2020).........................16

*In re Change Healthcare, Inc. Customer Data Security Breach Litigation*,
MDL No. 24-md-3108 (DWF/DJF), Dkt. 407 (D. Minn. July 7, 2025)
("Compl.") ....................................................................................................................... *passim*

*CSS, Inc. v. Herrington*,
354 F. Supp. 3d 702 (N.D. Tex. 2017) .........................................................................................6

*Cusumano v. Microsoft Corp.*,
162 F.3d 708 (1st Cir. 1998).................................................................................................5, 12

*Deluxe Fin. Servs., LLC v. Shaw*,
No. 16-CV-3065 (JRT/HB), 2017 WL 7369890 (D. Minn. Feb. 13, 2017)............................14

*Diversified Indus., Inc. v. Meredith*,
572 F.2d 596 (8th Cir. 1978) ......................................................................................................11

*EEOC v. Tex. Roadhouse, Inc.*,
303 F.R.D. 1, 2 (D. Mass. 2014)..................................................................................................10

*Farmers Ins. Exch. v. West*,
No. CV 11-2297, 2012 WL 12894845 (D. Minn. Sept. 21, 2012) .........................................13

*Gardner v. Cape Cod Healthcare, Inc.*,
344 F.R.D. 127 (D. Mass. 2023)....5

*Gino v. Pres. and Fellows of Harvard College*,
No. 1:23-CV-11775-MJJ-JDH, 2026 WL 1786093 (D. Mass. June 22, 2026)....6

*Greenberg v. PATHS Program Holding, LLC*
(MA), No. 3:19-CV-30032-MGM, 2023 WL 3868318 (D. Mass. June 7, 2023)....13

*Heidelberg Am. Inc. v. Tokyo Kikai Seisakusho, Ltd.*,
333 F.3d 38 (1st Cir. 2003)....12

*Larson v. Burlington N. & Santa Fe Ry. Co.*,
210 F.R.D. 663 (D. Minn. 2002)....15

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*,
100 F.R.D. 468 (D. Mass. 1984)....15

*Mass. Nurses Ass'n v. Radius Specialty Hosp., LLC*,
2016 WL 6090713 (D. Mass. Oct. 18, 2016)....16

*Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*,
197 F.3d 922, 925 (8th Cir. 1999)....12

*Mylan, Inc. v. Analysis Group, Inc.*,
No. CV 18-MC-91153-FDS, 2018 WL 1904183 (D. Mass. Apr. 20, 2018)....6

*In re NHL Players' Concussion Injury Litig.*,
No. MDL 14-2551 (SRN), 2017 WL 1493671 (D. Minn. Apr. 26, 2017)....5

*Pointer v. DART*,
417 F.3d 819 (8th Cir. 2005)....10

*In re Pork Antitrust Litig.*,
*No.* 18-CV-1776 (JRT/HB), 2022 WL 972401 (D. Minn. Mar. 31, 2022)....4, 5, 12

*Prime Therapeutics LLC v. CVS Pharm., Inc.*,
No. 22-MC-35, 2022 WL 17414478 (D. Minn. Dec. 5, 2022)....12, 19

*Prokosch v. Catalina Lighting, Inc.*,
193 F.R.D. 633 (D. Minn. 2000)....17

*Republic Nat'l Distrib. Co. v. Johnson Bros. Liquor Co.*,
No. 24-MC-0008 (JFD), 2024 WL 1479182 (D. Minn. Apr. 5, 2024)....12

*Rockstar Consortium US LP,* No. 14-91322-FDS, 2015 WL 5972422 (D. Mass. Oct. 14, 2015) ....13, 18

*In re Rule 45 Subpoena to Horizon Blue Cross Blue Shield of New Jersey*,
No. 1:26-mc-00486, Dkt. 2 (S.D.N.Y. Oct. 2, 2026)....6, 10

*Skinner v. O'Mara*,
No. CIV. 00-67-JD, 2000 WL 1507427 (D.N.H. July 25, 2000) ....15

*Solamere Cap. v. DiManno*,
621 F. Supp. 3d 152 (D. Mass. 2022) ....7

*Stecklein & Rapp Chart. v. Experian Info. Sols., Inc.*,
113 F.4th 858 (8th Cir. 2024) ....18

*Strike 3 Holdings, Inc. v. Doe*,
651 F. Supp. 3d 286 (D. Mass. 2022) ....5

*Upjohn Co. v. United States*,
449 U.S. 383 (1981)....11

**Rules**

Fed. R. Civ. P.
26....1, 4, 20
26(b)(1) ....5, 7
30(b)(6) ....6, 17, 18, 19
34....4, 13
45.... *passim*
45(d)(1) ....3, 5, 18
45(d)(2)(B)(ii) ....19
45(d)(3)(A)....5
45(d)(3)(A)(iv)....5, 12
45(f)....1, 6, 20

## INTRODUCTION

This matter involves a nonparty subpoena (the "Subpoena") served by a putative class of healthcare providers ("Provider Plaintiffs" or "Plaintiffs") upon Blue Cross and Blue Shield of Massachusetts, Inc. ("BCBSMA") for claims data and corporate business records, which the Plaintiffs apparently intend to use in a multidistrict litigation ("MDL") venued in the District of Minnesota against Change Healthcare, Inc. ("Change Healthcare" or "Change"). The MDL centers on the facts and circumstances of an alleged cyber-attack and data breach of Change Healthcare that occurred in 2024. The subpoena purports to require BCBSMA to produce vast quantities of corporate records and claims data and seeks a corporate representative deposition of BCBSMA within this judicial district. BCBSMA's systems were not breached, and Plaintiffs do not allege that BCBSMA caused the ransomware attack or resulting shutdown. BCBSMA now moves to transfer this Motion to the District of Minnesota under Rule 45(f) and moves to quash the Subpoena under Rules 26 and 45 because it seeks irrelevant discovery, imposes an undue and disproportionate burden on a nonparty, and seeks information available from more direct sources.

## BACKGROUND

### A. Underlying Data Breach Litigation

The underlying litigation concerns a data breach affecting the Change Healthcare, Inc., clearinghouse platform ("Change Platform"). *See* Provider Master Complaint, *In re Change Healthcare, Inc. Customer Data Security Breach Litigation*, MDL No. 24-md-3108 (DWF/DJF), Dkt. 407 (D. Minn. July 7, 2025) ("Compl.").[1] The Provider Plaintiffs allege that their business operations were disrupted by the cyberattack and resulting shutdown. *Id*. Provider Plaintiffs allege

[1] Unless otherwise indicated, all references to "Dkt." are to the docket in *In re Change Healthcare, Inc. Customer Data Security Breach Litigation*, MDL No. 24-md-3108 (DWF/DJF) (D. Minn.).

that they relied on the Change Platform as an intermediary to process insurance claims and that the cyberattack and resulting shutdown disrupted their business operations. *Id.* ¶¶ 1, 264.

The Provider Plaintiffs principally attribute their injuries to the MDL Defendants' alleged failure to adequately secure and maintain the Change Platform and allege that the resulting shutdown interrupted claims processing, delayed claims submissions and payments, and caused economic losses. *Id.* ¶¶ 447–56.

To date, no Provider Class has been certified. Plaintiffs seek certification of a nationwide class consisting of "[a]ll Providers whose use of Change's Services, either directly or indirectly, was disrupted, or whose payments were delayed or denied because of the Ransomware Attack and shutdown." *Id.* ¶ 437. Alternatively, Plaintiffs propose state-specific sub-classes, including a Massachusetts class consisting of providers residing in Massachusetts "whose use of Change's Services was disrupted, or whose payments were delayed because of the Ransomware Attack and shutdown." *Id.* ¶ 438.

On June 7, 2024, the Judicial Panel on Multidistrict Litigation ("JPML") centralized related actions arising from the ransomware attack in the District of Minnesota for coordinated or consolidated pretrial proceedings. *See* Transfer Order, Dkt. 1. In its Transfer Order, the JPML observed that "[d]iscovery in all actions will focus on how Change Healthcare's system was breached, what security measures Change Healthcare had in place, and the measures taken after the data breach was discovered to notify those impacted and to restore healthcare providers' access to insurance and other information stored in the Change Healthcare platform." *Id.* at 2. The Panel further recognized that the actions would involve discovery concerning the "circumstances and

consequences" of the breach, including the lockdown of Change's systems that "interrupted the flow of insurance claims and payments." *Id.*

**B. The Subpoena**[2]

Before Provider Plaintiffs served the Subpoena, the MDL court had established a protocol governing third-party discovery. MDL Pretrial Order No. 26 Deposition and Subpoena Protocol requires that a Rule 45 subpoena for documents or testimony "be served at least 30 days prior to the date for deposition or the production of documents" and requires the serving party to coordinate with the recipient concerning "topics, scope, timing, location(s), and any other logistics." See Dkt. 512 ¶ 3.

On September 21, 2026, the Provider Plaintiffs served the Subpoena commanding BCBSMA to produce documents and designate one or more corporate representatives to testify regarding numerous subjects on October 5, 2026, just before the scheduled close of fact discovery on November 2, 2026. *See* Kurtz Decl., Ex. 1. The Subpoena thus provided BCBSMA only 14

---

[2] Counsel for BCBSMA met and conferred with Provider Plaintiffs regarding the Subpoena by teleconference on October 16, 2026 from 11:30 A.M. – 12:24 P.M. Marcus Guith and Mollie Buelow attended for BCBSMA, and Nicholas Murphy and David Goodwin attended for the Provider Plaintiffs. Kurtz Decl., Ex. 2.

During the conferral process, Plaintiffs acknowledged that the Subpoena as served does not accurately reflect the discovery they now seek. Specifically, Plaintiffs (1) changed the requested timeframe from February 2019 to January 2021 forward; (2) changed the requested claims data to Massachusetts providers only; and (3) changed the exhibit attached to the Subpoena as being merely an exemplar and subsequently provided a narrower set of requested data fields by email. *See* Ex. 2. None of these limitations appears on the face of the Subpoena. Plaintiffs' counsel further stated that the claims data is necessary for its expert analysis but proposed that BCBSMA first produce whatever responsive data it can, after which Plaintiffs would determine whether the remaining information they subpoenaed is actually necessary. *Id.* Plaintiffs also confirmed that they requested substantially the same claims information from Change and are presently engaged in motion practice concerning those requests. *Id.* And Plaintiffs acknowledged that some of the requested information could be obtained from the Provider Plaintiffs themselves, but stated that collecting it from those providers would be burdensome. *Id.* These concessions underscore the problem: Plaintiffs served broad discovery on an uninvolved nonparty before determining what information they actually need, while simultaneously pursuing substantially the same information from a party and seeking to shift to BCBSMA collection burdens they would prefer not to impose on the providers whose alleged injuries they seek to prove. That is not a "reasonable step[] to avoid imposing undue burden or expense" on a nonparty. Fed. R. Civ. P. 45(d)(1).

days between service and the commanded date for compliance, contrary to the discovery protocol issued in the MDL. *Id.*; *see also* MDL Order No. 26, Dkt. No. 512.[3] The Subpoena seeks documents and testimony concerning, among other things: (1) detailed statistical information regarding claims submitted to BCBSMA by healthcare providers using Change Healthcare's clearinghouse, including denial rates and reasons for denials, billed charges, allowed amounts, amounts paid, and requests for verification of insurance; (2) communications with Defendants, payers, governmental entities, and healthcare providers regarding the Data Breach; (3) BCBSMA's "Analyses concerning the Data Breach"; (4) policies and procedures governing the submission and acceptance of claims; (5) remedial measures and business-practice changes BCBSMA made or considered in response to the Data Breach; (6) opinions, guidance, or recommendations concerning the Data Breach or its impact; (7) BCBSMA's contracts with any Defendant; and (8) communications concerning "the prosecution or defense of this Action." *See* Ex. 1. BCBSMA is not a party to the underlying action, and its systems were not subject to the February 2024 ransomware attack. The Subpoena nevertheless generally reaches back to January 1, 2021, to the present and seeks years of claims data, internal business information, and communications that would be unduly burdensome for a non-party like BCBSAMA to produce.

## <u>LEGAL STANDARD</u>

"The scope of discovery for a Rule 45 subpoena is the same as the scope of discovery under Rules 34 and 26 and is subject to the same constraints on relevance and proportionality." *In re Pork Antitrust Litig.*, No. 18-CV-1776 (JRT/HB), 2022 WL 972401, at *7 (D. Minn. Mar. 31, 2022)

[3] When BCBSMA pointed out the fact that Plaintiffs had improperly narrowed the time for third parties to respond to subpoenas, Plaintiffs agreed to extend the compliance date to 30 days from service.

(citations omitted); *Strike 3 Holds., Inc. v. Doe*, 651 F. Supp. 3d 286, 292 (D. Mass. 2022) ("A third-party subpoena is subject to the relevance and proportionality requirements"). Rule 45 further requires a party to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). "Concern for the burden on a nonparty subject to a subpoena carries special weight when balancing competing needs." *In re Pork Antitrust Litig*., 2022 WL 972401, at *7 (citations omitted); C*usumano v. Microsoft Corp*., 162 F.3d 708, 717 (1st Cir. 1998) ("concern for the unwanted burden" that a subpoena imposes on a nonparty "is a factor entitled to special weight in evaluating the balance of competing needs"). A subpoena that subjects a person to undue burden must be quashed or modified. Fed. R. Civ. P. 45(d)(3)(A)(iv). Even relevant discovery "is not permitted where no need is shown or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking the information." *In re NHL Players' Concussion Injury Litig*., 2017 WL 1493671, at *7 (D. Minn. Apr. 26, 2017) (citation omitted)).

## <u>ARGUMENT</u>

### I. THE MOTION SHOULD BE TRANSFERRED TO THE DISTRICT OF MINNESOTA.

A motion to quash or modify a subpoena must be brought in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(3)(A); *Gardner v. Cape Cod Healthcare, Inc.*, 344 F.R.D. 127, 130 (D. Mass. 2023). Because the Subpoena requires compliance in Massachusetts, this Court is the proper court in which to bring this Motion. *See* Ex. 1.

Rule 45(f) permits the transfer of subpoena-related motions to the issuing court "if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R.

Civ. P. 45(f); *Gino v. Pres. and Fellows of Harvard College*, No. 1:23-CV-11775-MJJ-JDH, 2026 WL 1786093, at *1 (D. Mass. June 22, 2026). "Where the person subject to the subpoena consents to transfer, a party seeking transfer need not show—and the Court need not find—extraordinary circumstances under Rule 45(f)." *CSS, Inc. v. Herrington*, 354 F. Supp. 3d 702, 707 (N.D. Tex. 2017) (citing Fed. R. Civ. P. 45(f); Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment). BCBSMA consents to transfer and respectfully requests that this Court transfer the Motion to the District of Minnesota so that the court overseeing the MDL may resolve its merits.[4] Plaintiffs agree. *See* Kurtz Decl., Ex. 3.

## II. THE SUBPOENA SHOULD BE QUASHED.

Whether the merits are heard in this Court, or in the MDL Court, the Subpoena should be quashed because it seeks irrelevant and disproportionate discovery, imposes an undue burden on BCBSMA as a nonparty, seeks information available from more direct sources, and requires Rule 30(b)(6) testimony on substantially the same sweeping subjects.

### A. The Subpoena Seeks Irrelevant Information.

The Subpoena should be quashed because it seeks discovery that is irrelevant. Parties may only obtain discovery that is relevant to the claims and defenses in the litigation, so courts routinely

[4] BCBSMA's consent is sufficient to order transfer to the MDL Court under Rule 45(f). The circumstances of this dispute also provide exceptional circumstances sufficient to transfer the action. In evaluating whether "exceptional circumstances" warrant transfer absent consent, courts consider factors relating to the underlying litigation, including its complexity, procedural posture, duration, the nature of issues pending before or already resolved by the issuing court, the possibility of inconsistent outcomes, and judicial economy. See, *Mylan, Inc. v. Analysis Group, Inc.*, No. CV 18-MC-91153-FDS, 2018 WL 1904183, at *1 (D. Mass. Apr. 20, 2018). Here, those considerations favor transfer. Judge Foster is already managing discovery in this complex MDL. *See* Dkts. 243, 271, 497, 512. Resolution of BCBSMA's Motion to Quash will require consideration of the scope of the Provider Plaintiffs' claims and proposed classes, the procedural posture of the MDL, discovery already available from the parties, and the relevance and proportionality of additional discovery sought from a nonparty. Provider Plaintiffs have also served materially similar subpoenas on other nonparties. See *In re Rule 45 Subpoena to Horizon Blue Cross Blue Shield of New Jersey*, No. 1:26-mc-00486, Dkt. 2 (S.D.N.Y. Oct. 2, 2026).

quash subpoenas that seek irrelevant discovery. *See* Fed. R. Civ. P. 26(b)(1); *Benson v. Kemske*, No. CV 17-3839 (MJD/DTS), 2018 WL 5294572, at *1 (D. Minn. Oct. 25, 2018) (quashing subpoena seeking information irrelevant to the action); *Solamere Cap. v. DiManno*, 621 F. Supp. 3d 152, 162 (D. Mass. 2022) (quashing subpoena where discovery sought was "not highly or obviously relevant" to claims, and burden to nonparty outweighed any relevance or benefit.); *Cardionet, LLC v. Infobionic, Inc*., 2021 WL 2827380, at *2 (D. Mass. July 6, 2021) (similar). The Subpoena here seeks irrelevant information, including years of BCBSMA claims data, that includes hundreds of millions of claim lines for services rendered by providers other than the named Plaintiffs, internal business information, and communications that do not concern the claims or defenses at issue in the underlying litigation.

As described above, the Provider Plaintiffs suffered injuries they attribute to Change's alleged failure to secure its platform and adequately respond to the February 2024 ransomware attack. Compl. ¶¶ 447–56. BCBSMA had no role in the breach or resulting shutdown. The JPML also identified the common discovery supporting centralization as focused on Change Healthcare and the February 2024 event. In its Transfer Order, the Panel explained that:

> Discovery in all actions will focus on how Change Healthcare's system was breached, what security measures Change Healthcare had in place, and the measures taken after the data breach was discovered to notify those impacted and to restore healthcare providers' access to insurance and other information stored in the Change Healthcare platform.

*See* Dkt. 1 at 2. The Panel further recognized that the actions would involve discovery concerning the "circumstances and consequences" of the breach, including the shutdown that "interrupted the flow of insurance claims and payments." *Id*. But recognizing that the shutdown interrupted claims

and payments does not make a nonparty payer's historical claims operations and internal business information relevant merely because some claims may have been transmitted through the Change's Platform. Yet that is precisely what the Subpoena seeks.

Specifically, as to the document requests, the Subpoena seeks the following information:

- Request Nos. 1-6 demand claims data that BCBSMA obtained from Change Healthcare's EDI Clearinghouse, for a period of nearly six years, including reimbursement, denial, verification, and ultimately claim-line data, historical billed charges, allowed amounts, payment amounts, network status, and CPT information.

- Request Nos. 7-10 demand that BCBSMA produce all communications with Defendants, healthcare providers, governmental entities, and other payors concerning the Data Breach and claims or payment processing

- Request Nos. 11-14 demand BCBSMA's "Analyses Concerning the Data breach," claims-submission policies, remedial measures, business-practice changes, and opinions/guidance concerning the breach's impact on the healthcare industry, providers, patients, and BCBSMA itself.

- Request No. 15 demands all contracts with any Defendant in effect for more than five years.

- Request No. 16 demands BCBSMA's nonprivileged documents and communications concerning the "prosecution or defense of this Action."

*See* Ex. 1.

Requests Nos. 1–6 illustrate the disconnect between Plaintiffs' claims and the discovery sought from BCBSMA. Plaintiffs' alleged injuries arise from the February 2024 ransomware attack and resulting interruption of *Change Healthcare's services,* yet Plaintiffs demand BCBSMA produce claims-data from January 2021 through the present, including claims volumes, billed charges, allowed amounts, payments, denials, verification transactions, and detailed claim-level data, that is untethered to Plaintiffs' claims. Whether BCBSMA received, allowed, paid, or denied

particular claims through Change Healthcare's Clearinghouse over nearly six years does not establish how Change's systems were breached, what security measures Change maintained, whether personal information was exposed, what Change did in response to the breach, or whether Defendants are liable for Plaintiffs' alleged injuries. *See* Ex. 1, Requests Nos. 1–6. Moreover, because it is unclear whether BCBSMA can even segregate claims transmitted through Change's Clearinghouse, compliance could require production of claims data unrelated to Change, including protected health information for millions of members. Srinivasan Decl. ¶ 10. Accordingly, Requests 1–6 seek information that is overbroad and not probative of any claim or defense in the action, and these Requests should be quashed as irrelevant.

Requests Nos. 7–10 similarly seek irrelevant information. These Requests seek BCBSMA's communications concerning the data breach with (a) the MDL Defendants; (b) governmental bodies; (c) healthcare providers; (d) other payors. But whatever communications BCBSMA had with the MDL Defendants are properly sought from the MDL Defendants, and not BCBSMA as a third-party. Moreover, whatever communications BCBSMA had with governmental bodies, providers, or other payors is entirely irrelevant to the claims and defenses at issue. BCBSMA's systems were not breached, and Plaintiffs do not allege that BCBSMA caused or facilitated the ransomware attack. BCBSMA's communications concerning claims-processing disruptions do not establish how Change's systems were breached, what security measures Change maintained, whether Change adequately responded to the attack, or whether Defendants are liable for Plaintiffs' alleged injuries. What BCBSMA knew, communicated, or concluded about an attack on Change's systems does not establish the facts underlying Plaintiffs' claims against Defendants. *See* Ex. 1,

Requests Nos. 7–10. Accordingly, because Requests Nos. 7–10 seek information unrelated to the claims and defenses at issue, they should be quashed. *See Pointer v. DART*, 417 F.3d 819, 821 (8th Cir. 2005) ("A subpoena must also seek relevant information.") (citations omitted); *EEOC v. Tex. Roadhouse, Inc.*, 303 F.R.D. 1, 2 (D. Mass. 2014) (same).

Requests Nos. 11–14 stray even further from the conduct underlying Plaintiffs' claims by seeking discovery into BCBSMA's *own* analyses, business operations, and response to the breach. *See* Ex. 1, Requests Nos. 11–14. None of this information is relevant. BCBSMA's independent claims-submission policies, remedial measures, analysis of the data breach, and business decisions relating to the data breach cannot establish how the breach occurred, whether affected providers suffered financial losses and/or operational harm, or whether the MDL Defendants are liable; accordingly, these requests for irrelevant documents should be quashed.

Next, the Provider Plaintiffs' request for every contract or agreement between BCBSMA and any Defendant in effect from February 1, 2021, through the present also seeks irrelevant materials. Plaintiffs assert no claim arising from or seeking to enforce BCBSMA's contractual rights against any Defendant. Plaintiffs have already articulated their purported relevance theory for this same request in connection with a substantially identical subpoena served on Horizon Blue Cross Blue Shield of New Jersey ("Horizon"): during the parties' meet-and-confer, Plaintiffs asserted that Horizon's contracts may be relevant because they could identify "what was supposed to happen if a breach occurred." *See In re Rule 45 Subpoena to Horizon Blue Cross Blue Shield of New Jersey*, No. 1:26-mc-00486, Dkt. 2, at 7 n.3 (S.D.N.Y. Oct. 2, 2026). But any contractual obligations Defendants may have owed another nonparty payer do not establish the duties

Defendants owed Plaintiffs or whether Defendants breached those duties. Plaintiffs do not allege that BCBSMA's contracts with Defendants created or defined any obligation owed to Plaintiffs. Accordingly, whether Defendants complied with obligations owed to BCBSMA under those separate agreements does not establish whether Defendants breached any duty owed to Plaintiffs.

Finally, Request No. 16 seeks discovery unrelated to the claims and defenses at issue and instead seeks BCBSMA's documents and communications concerning the MDL action itself, including communications with "any Defendant, or any other third party." *See* Ex. 1, Request No. 16. BCBSMA is not a party to the MDL, and its views of the ongoing litigation do not establish whether Change adequately secured its systems, caused the February 2024 shutdown, or is liable for Plaintiffs' alleged injuries. In short, nothing in the Provider Complaint places BCBSMA's assessment of this litigation or its litigation-related communications at issue, nor could it.[5]

For all of these reasons, the Subpoena only seeks documents that are irrelevant to the claims and defenses in this matter, and it should be quashed in its entirety.

**B. The Subpoena Imposes an Undue Burden on a Nonparty Disproportionate to Any Legitimate Discovery Need.**

The Subpoena disregards the protections afforded to non-parties to avoid imposing undue discovery burdens. Indeed, "[c]oncern for the burden on a nonparty subject to a subpoena carries

[5] This Request expressly targets BCBSMA's communications concerning the "prosecution or defense" of this litigation and therefore reaches directly into communications potentially protected by the attorney-client privilege. The privilege protects qualifying communications between corporate employees and counsel made for the purpose of obtaining or providing legal advice. See *Upjohn Co. v. United States*, 449 U.S. 383, 394–95 (1981) (holding communications between corporate employees and counsel protected where they were made at the direction of corporate superiors for the purpose of securing legal advice); *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 609–10, fn. 4 (8th Cir. 1978) (en banc) ("[T]he client need not be involved in litigation for the attorney-client privilege to attach."). At a minimum, BCBSMA would be forced to incur thousands of dollars in legal expense reviewing responsive documents for privilege and generating a privilege log to respond to this Request.

special weight when balancing competing needs." *In re Pork Antitrust Litig.*, No. 18-CV-1776 (JRT/HB), 2022 WL 972401, at *7 (D. Minn. Mar. 31, 2022); C*usumano*, 162 F.3d at 717 (non-party status "is a factor entitled to special weight in evaluating the balance of competing needs.").

That concern applies here, where Plaintiffs seek extensive and voluminous discovery from BCBSMA despite its nonparty status. Accordingly, even assuming Plaintiffs could establish some attenuated level of relevance, the Subpoena should still be quashed because the burden it imposes on a nonparty is disproportionate to any legitimate discovery need. Rule 45 requires a court to quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv); *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) ("[D]iscovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information."); *see also Republic Nat'l Distrib. Co. v. Johnson Bros. Liquor Co.*, No. 24-MC-0008 (JFD), 2024 WL 1479182, at *2 (D. Minn. Apr. 5, 2024) (concluding that certain nonparty requests were overbroad because their "tangential relevance [was] outweighed by undue burden"); *Heidelberg Am. Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003) (similar).

In determining whether a subpoena imposes an undue burden, courts consider "(1) relevance; (2) the need for the discovery; (3) how broadly the requests are framed; (4) the time period covered by the subpoena; (5) how particularly the subpoena describes the documents sought; (6) the burden imposed; and (7) that the recipient is a nonparty to the litigation." *Prime Therapeutics LLC v. CVS Pharm., Inc.*, No. 22-MC-35 (WMW/JFD), 2022 WL 17414478, at *2

(D. Minn. Dec. 5, 2022) (quoting C*edar Rapids Lodge & Suites, LLC v. Seibert*, No. 14-CV-4839 (SRN/KMM), 2018 WL 3019899, at *3 (D. Minn. June 18, 2018)); *Rockstar Consortium US LP,* No. 14-91322-FDS, 2015 WL 5972422, at *4 (D. Mass. Oct. 14, 2015) (same). Those considerations weigh heavily against the discovery sought here.

First, Requests Nos. 1–6 impose an extraordinary data-collection and compilation burden. Plaintiffs seek nearly six years of claims information, including claims volumes, billed charges, allowed amounts, payments, denials, verification transactions, and detailed claim-level data. Request No. 4 alone seeks numerous fields, including provider and claim identifiers, procedure and revenue codes, network status, plan information, payment and denial information, adjustment codes, billed charges, allowed amounts, plan liability, and patient-payment information. Compliance would require BCBSMA to engage a data developer to prepare unique code to identify and extract underlying data and, for certain requests, compile or aggregate that data into the information Plaintiffs demand. Srinivasan Decl. ¶¶ 6-18.

Rule 45, moreover, does not require BCBSMA to create documents or compilations that do not exist. *Farmers Ins. Exch. v. West*, No. CV 11-2297 (PAM/JJK), 2012 WL 12894845, at *5 (D. Minn. Sept. 21, 2012) ("[N]o party is required to create documents in response to a Rule 34 request"); *Greenberg v. PATHS Program Holding, LLC* (MA), No. 3:19-CV-30032-MGM, 2023 WL 3868318, at *3 (D. Mass. June 7, 2023) (a party cannot be compelled to create nonexistent documents). Thus, to the extent Requests Nos. 1–6 require BCBSMA to calculate, aggregate, or compile data that it does not ordinarily maintain, BCBSMA need not create those materials.

Second, the breadth and temporal scope of the Subpoena exacerbate that burden. Plaintiffs'

claims arise from a ransomware attack in February 2024, yet Requests Nos. 1–6 reach back to January 1, 2021, and continue through the present. Plaintiffs thus seek nearly six years of claims data from a nonparty in order to investigate injuries allegedly caused by a discrete event.

Third, Plaintiffs' need for this burdensome nonparty discovery is substantially diminished because more direct sources possess the information underlying Plaintiffs' claims. Plaintiffs themselves allege that they used the Change Platform to submit claims and that they suffered missed or delayed payments, and the Complaint expressly alleges that Defendants and their affiliates possess information identifying proposed class members. Compl. ¶¶ 264, 440–41, 456. Those allegations identify the parties themselves as direct sources of information concerning the transactions and injuries Plaintiffs seek to investigate through BCBSMA's historical claims data. See *Deluxe Fin. Servs., LLC v. Shaw*, No. 16-CV-3065 (JRT/HB), 2017 WL 7369890, at *4 (D. Minn. Feb. 13, 2017) (discovery is not permitted "where no need is shown" or where the burden of compliance outweighs the requesting party's need).

Requests Nos. 7–10 impose an additional burden by demanding sweeping collections of BCBSMA's communications. These requests are not directed at discrete documents or identified communications. Instead, Plaintiffs demand "all" communications between BCBSMA and Defendants, governmental entities, healthcare providers, and other payors concerning the breach and claims or payment processing. *See* Ex. 1, Requests Nos. 7–10. The breadth of these requests potentially implicates numerous BCBSMA employees, business units, communications, and files that would need to be identified, collected, reviewed for responsiveness, and screened for privilege and confidentiality before production. Cloutier Decl. ¶¶ 5-10. Requiring a nonparty to undertake

that broad collection and review further weighs against enforcement of the Subpoena.

In addition to being irrelevant, Requests Nos. 11–14 impose serious burdens on BCBSMA to collect, review, and produce internal analyses, policies, decision-making, and business responses relating to the data breach. *See* Ex. 1, Requests Nos. 11–14. These requests potentially implicate multiple business functions and require BCBSMA to identify not only policies and measures actually implemented, but measures merely "considered," as well as guidance concerning subjects as broad as the healthcare industry generally. *Id; see also* Cloutier Decl. ¶¶ 5-10. Requiring a nonparty to undertake such a sweeping inquiry into its own internal operations and decision-making further weighs against enforcement of the Subpoena.

Fourth, no Provider Class has been certified. Accordingly, discovery appropriately may be limited to the named plaintiffs rather than extend to "extensive discovery on the merits of the 'class claims,'" particularly where resolution of class certification may affect the appropriate scope of discovery. *Larson v. Burlington N. & Santa Fe Ry. Co.*, 210 F.R.D. 663, 665–67 (D. Minn. 2002); *Skinner v. O'Mara*, 2000 WL 1507427, at *1 (D.N.H. July 25, 2000) ("[D]iscovery aimed at evidence relevant to the merits of the plaintiffs' claims, but not specifically relevant to the questions pertaining to class certification, is premature."); *see also M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 100 F.R.D. 468, 471 (D. Mass. 1984) (similar). Here, the lack of class certification weighs against the requested discovery.

Finally, it would be unduly burdensome to require BCBSMA to produce its communications concerning the "prosecution or defense" of this Action because the vast majority of any such communications would be privileged, and whatever analysis or view BCBSMA had

or has of the underlying litigation is irrelevant to any party's claims or defenses. *See* Ex. 1, Request No. 16. If BCBSMA were forced to comply with this document request, it would be forced to identify, collect, and review potentially responsive litigation-related communications to determine which materials are protected by the attorney-client privilege or work-product doctrine, and to generate a burdensome privilege log. Requiring a nonparty to undertake that privilege review for discovery unrelated to the claims and defenses at issue further compounds the undue burden to be imposed on a nonparty.

**C. The Subpoena Seeks Discovery Obtainable from the Parties to the MDL.**

The Subpoena should also be quashed because it seeks discovery that can be obtained from Defendants in the MDL. Courts routinely reject attempts to obtain from nonparties discovery that is available from the parties themselves. In *In re CenturyLink Sales Practices & Securities Litigation*, the court quashed a subpoena seeking documents and communications from a nonparty where the discovery was "duplicative or cumulative of the discovery the plaintiffs already obtained or could have obtained from the defendants." No. CV 18-296 (MJD/KMM), 2020 WL 8256364, at *7 (D. Minn. Oct. 28, 2020); *see also Mass. Nurses Ass'n v. Radius Specialty Hosp., LLC*, 2016 WL 6090713, at *2 (D. Mass. Oct. 18, 2016) (same).

The same principles apply here. Communications and contracts with Defendants can be obtained from Defendants. Plaintiffs seek claims information to substantiate their alleged injuries and damages, but the Plaintiffs' own allegations identify the parties as more direct sources of information. Plaintiffs allege that ***they*** used Change to process claims, that the shutdown prevented ***them*** from submitting claims and receiving payments, and that Defendants and ***their*** affiliates possess information identifying proposed class members. Compl. ¶¶ 264, 267–69, 440–41, 456.

Plaintiffs should not shift to BCBSMA the burden of compiling years of claims data to recreate information available from the parties directly involved in the transactions and alleged injuries.

**D. The Rule 30(b)(6) Topics also impose an undue burden on BCBSMA.**

In addition to seeking sweeping document discovery, the Subpoena requires BCBSMA to designate corporate representatives to testify on ten topics substantially overlapping with the document requests, including claims data and processing, communications and analyses concerning the breach, claims-administration policies, BCBSMA's response to the breach, and contracts with Defendants. *See* Ex. 1, Topics Nos. 1–10. For the same reasons discussed above, those topics extend beyond the claims and defenses at issue.

Rule 30(b)(6) requires a corporate entity to designate one or more persons to testify regarding information "known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). Additionally, a party seeking corporate testimony must identify "with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000). Compliance would require BCBSMA to identify appropriate corporate representatives, and then investigate and educate those representatives regarding information from across the Company. Given BCBSMA's nonparty status and the breadth and substantial overlap of the noticed topics, the Rule 30(b)(6) deposition enhances the Subpoena's undue burden.

**III. The Court Should Order Plaintiffs to Pay BCBSMA's Costs.**

Rule 45 requires an issuing party to "take reasonable steps to avoid imposing undue burden or expense" on a subpoena recipient and requires an appropriate sanction for failure to do so, which may include reasonable attorneys' fees. Fed. R. Civ. P. 45(d)(1); *see Stecklein & Rapp Chart. v.*

*Experian Info. Sols., Inc.*, 113 F.4th 858, 863 (8th Cir. 2024) (affirming sanctions for subpoenas that imposed undue burden despite good faith on issuer); *Rockstar Consor. US LP*, No. 14-91322-FDS, 2015 WL 5972422, at *7 (D. Mass. Oct. 14, 2015) (same).

The same considerations apply here. Plaintiffs served BCBSMA with sweeping requests for years of claims data, internal business information, and Rule 30(b)(6) testimony. Request No. 16 compounds that burden by requiring BCBSMA to identify, collect, and review litigation-related communications to determine what is privileged before producing any responsive nonprivileged material. *See* Ex. 1, Request No. 16. *Stecklein* specifically recognized the burden associated with reviewing subpoenaed materials and preparing a privilege log to protect privileged communications. 113 F.4th at 863. Plaintiffs also initially failed to comply with the MDL court's protocol requiring third-party subpoenas to provide at least 30 days for compliance and coordination concerning "topics, scope, timing, location(s), and any other logistics." *See* Dkt. 512 ¶ 3. Plaintiffs served the Subpoena on September 21, 2026, commanding compliance on October 5, 2026. *See* Ex. 1. Taken together, the Subpoena's breadth, privilege-review burden, and failure to comply with the MDL court's third-party discovery protocol demonstrate that Plaintiffs did not take the "reasonable steps" Rule 45(d)(1) requires. BCBSMA therefore respectfully requests its reasonable costs and attorneys' fees incurred in responding to and moving to quash the Subpoena.

## IV. Alternatively, the Court Should Order Plaintiffs to Pay the Costs of Compliance.

If the Court declines to quash the Subpoena in its entirety, Rule 45 states "the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). Accordingly, "[i]f a nonparty shows that compliance would result in significant expense, it can shift costs to the party which served the subpoena."

*Prime Therapeutics LLC v. CVS Pharmacy, Inc.*, No. 22-MC-35 (WMW/JFD), 2022 WL 17414478, at *3 (D. Minn. Dec. 5, 2022) (citing *Cedar Rapids Lodge & Suites, LLC v. Seibert*, No. 14-CV-4839 (SRN/KMM), 2018 WL 3019899, at *2 (D. Minn. June 18, 2018)). Courts consider the recipient's interest in the litigation, the parties' relative ability to bear the costs, and the litigation's public importance. *Id.*; *see also Barclays PLC v. FX Transparency, LLC*, No. 1:22-MC-91048-PBS, 2022 WL 3227534, at *4 (D. Mass. Apr. 27, 2022).

Those considerations support cost shifting here. First, BCBSMA is a nonparty with no stake in Plaintiffs' recovery, and compliance would require substantial personnel and resources to identify, extract, compile, review, and produce the requested information and prepare corporate representatives for testimony. Second, compliance here would require substantially more than the ordinary inconvenience associated with responding to a subpoena. As discussed above, Plaintiffs seek more than five years of detailed claims data, together with broad categories of communications, analyses, internal policies, and business materials, followed by Rule 30(b)(6) testimony concerning substantially the same subjects. *See* Ex. 1. Compliance would require BCBSMA to devote substantial personnel and resources to identifying, extracting, compiling, collecting, reviewing, and producing responsive information and preparing corporate representatives for testimony. Srinivasan Decl. ¶¶ 6-18; *see also* Cloutier Decl. ¶¶ 5-10. This is not the ordinary cost of reviewing a readily available file. *Cf. Cedar Rapids Lodge & Suites*, 2018 WL 3019899, at *2 (finding that three hours spent reviewing a file constituted an "ordinary incident of responding to a subpoena," rather than a significant expense). Moreover, requiring Plaintiffs to bear the expense of discovery places the cost with those pursuing and potentially benefiting from

the class-wide claims, rather than requiring a single nonparty with no stake in the litigation brought in simply to subsidize Plaintiffs' prosecution. Third, the public-importance factor does not justify requiring BCBSMA to absorb the significant expense of Plaintiffs' discovery. BCBSMA does not dispute that the February 2024 ransomware attack and its effects on the healthcare system implicate matters of public concern. But Plaintiffs seek monetary recovery for economic losses allegedly resulting from Defendants' response to the attack, and the discovery sought from BCBSMA is directed to developing evidence of those alleged losses—not identifying the perpetrators, remedying an ongoing cybersecurity threat, or investigating wrongdoing. The public importance of the underlying ransomware attack therefore does not justify requiring an uninvolved nonparty to bear the significant expense of discovery undertaken to advance Plaintiffs' claims for monetary relief.

Accordingly, if the Court orders BCBSMA to comply with the Subpoena, BCBSMA respectfully requests that the Court shift the associated expense to Plaintiffs.

## CONCLUSION

For the foregoing reasons, BCBSMA respectfully requests that this Court transfer the Motion to the District of Minnesota pursuant to Rule 45(f). Upon transfer, BCBSMA respectfully requests that the Subpoena be quashed pursuant to Rules 26 and 45 and that BCBSMA be awarded the additional relief requested herein.

Dated: October 21, 2026

By: */s/Robert F. Callahan*
**ROBINS KAPLAN LLP**

Robert F. Callahan (MA 685728)
800 Boylston Street
Suite 2500
Boston, Massachusetts 02199
T. 617.267.2300
RCallahan@RobinsKaplan.com

Jamie R. Kurtz (MN 0391792) (pro hac vice forthcoming)
Nathaniel J. Moore (MN 0399004 ) (pro hac vice forthcoming)
Marcus A. Guith (MN 0399520) (pro hac vice forthcoming)
Mollie A. Buelow (pro hac vice forthcoming)

800 LaSalle Ave, Ste 2800
Minneapolis, Minnesota 55402
T: (612) 349-8500
jkurtz@robinskaplan.com
nmoore@robinskaplan.com
mguith@robinskaplan.com
mbuelow@robinskaplan.com

***Attorneys for Blue Cross and Blue Shield of Massachusetts Inc.***

**CERTIFICATE OF SERVICE**

I, Robert F. Callahan, Jr., hereby certify that on this day I caused a copy of the foregoing to be served on the attorney of record for each party by electronic mail to the following counsel who represent the Plaintiffs' Steering Committee in the underlying litigation:

Nicholas Murphy; nmurphy@hausfeld.com
David Goodwin; dgoodwin@gustafsongluek.com
Amelia A. Haselkorn; ahaselkorn@lchb.com
Zachary M. Vaughan; zvaughan@bergermontague.com
Melissa Gardner; mgardner@lchb.com

Dated: October 21, 2026

*_/s/ Robert F. Callahan, Jr._*
Robert F. Callahan, Jr.